Jose Manuel **CABRERA–DELGADO,**
a/k/a "Carlos Fernandez,"
**Petitioner,**

v.

**UNITED STATES of America,**
**Respondent.**

**Nos. 98CR1201(MBM),**
**99Civ.12026(MBM).**

United States District Court,
S.D. New York.

Aug. 31, 2000.

Jose Manuel Cabrera–Delgado, Brooklyn, NY, Mary Jo White, United States Attorney for the Southern District of New York, David B. Anders, Assistant U.S. Attorney, New York, NY, Petitioner pro se.

## OPINION AND ORDER

MUKASEY, District Judge.

Jose Manuel Cabrera–Delgado was charged in indictment 98 Cr. 1201 with reentering this country illegally after having been deported following a state court drug conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). He pleaded guilty and was sentenced to 70 months' imprisonment. He now petitions pursuant to 28 U.S.C. § 2255 to set aside the judgment of conviction on the ground that his attorney was ineffective. For the reasons set forth below, the application is denied and the petition is dismissed.

Cabrera taxes his attorney with the following failures: failure to seek dismissal of the indictment based on an alleged violation of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.App. § 2 (1994), failure to move for downward departure due to allegedly Draconian conditions of pretrial detention, and failure to object to alleged double counting in computing Cabrera's criminal history category. He claims that these failures deprived him of effective assistance of counsel, as measured by the standards of *Strickland v. Washington,* 466 U.S. 668, 687–88, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is no need here, however, to discuss those standards in detail, except to note that a petitioner who presses such a claim must "affirmatively prove prejudice" by showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 693–94, 104 S.Ct. 2052. That standard cannot be met here because, as set forth below, none of the alleged failures made any difference in the outcome of Cabrera's case.

Cabrera alleges that after his most recent arrest, in August 1995, and the discovery by the Immigration and Naturalization Service ("INS") that he had been previously deported, INS lodged a detainer at the state facility where he was being held. That, he argues, triggered the protections of the IAD, which entitled him to demand that any charge that was the subject of the detainer be resolved within four months. Because he was not even indicted until October 1998, he believes that the IAD was violated, and an alert lawyer would have moved to dismiss the indictment.

Although the government disputes that the detainer in fact was lodged (Conner Decl. ¶ 4), it does not dispute that a detainer was prepared. (4/7/00 Letter of David Anders to the Court p. 2; Anders Decl. Exh. B) I am willing to assume *arguendo* for purposes of this proceeding that the document the government concedes was prepared, dated June 13, 1997, indeed was lodged at the state facility where Cabrera was then detained. That document simply notified the state facility that the INS had undertaken an investigation "to determine whether this person [Cabrera] may be sub-

ject to deportation." (Anders Decl. Exh. B)

The purpose of the IAD is to assure prompt disposition of charges against prisoners already detained on other charges. Article I of the IAD identifies as the compact's focus detainers "based on untried indictments, informations or complaints." 18 U.S.C.App. § 2. As the Supreme Court has noted, "The central provisions of the [IAD] are Art. III and Art. IV. Article III provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy disposition of the charges giving rise to the detainer." *United States v. Mauro*, 436 U.S. 340, 351, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Article III(a) provides that when there is pending "any indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner," he may request from a court "a final disposition to be made of the indictment, information or complaint." 18 U.S.C.App. § 2. Article IV provides a means for the jurisdiction that has lodged the detainer "to secure the prisoner's presence for disposition of the outstanding charges," and requires that those charges be tried within 120 days of the arrival of the prisoner in the receiving jurisdiction, unless a reasonable continuance is granted. *Mauro*, 436 U.S. at 352, 98 S.Ct. 1834 (citing 18 U.S.C.App. § 2). Thus, the only detainer covered by the IAD is one that relates to criminal charges.

■ However, the detainer here assumed to have been lodged against Cabrera did not relate to criminal charges. Rather, as noted above, it was simply a notification that the INS had undertaken an investigation to determine whether Cabrera "may be subject to deportation." (Anders Decl. Exh. B) Which is to say, the detainer dealt with a potential civil action against Cabrera to deport him, not an actual criminal charge of illegal reentry. Such a detainer is not covered by the IAD. *See United States v. Gonzalez–Mendoza*, 985 F.2d 1014, 1016 (9th Cir.1993) (INS

civil detainer "does not fall within the terms of the IAD"). Because the detainer in question was not one covered by the IAD, any motion to dismiss based on a violation of the IAD would have been denied as groundless. Counsel cannot be taxed for ineffectiveness for having failed to make a futile motion to dismiss the indictment.

■ Further, the record reflects that Cabrera's attorney did move for downward departure on a variety of grounds, including the rigors of Cabrera's confinement at the Hudson County Jail. I denied the application. (10/18/99 Tr. 3–4) That other defendants in other cases may have been given downward departures based on substandard conditions of confinement does not mean that Cabrera was entitled to such a departure, or that his attorney was ineffective for having failed to obtain it.

■ Finally, there was no double counting in the computation of Cabrera's criminal history. Cabrera was convicted in state court on May 22, 1991 of an attempted drug sale alleged to have occurred on October 18, 1989 and for which he was arrested on that date (PSR ¶¶ 28, 29); he was convicted in state court on November 15, 1991 of an attempted robbery that occurred January 31, 1991 (PSR ¶¶ 30, 31) The U.S. Sentencing Guidelines specify that although prior sentences in related cases are to be counted as one sentence for criminal history purposes, "[p]rior sentences in unrelated cases are to be counted separately." U.S.S.G. § 4A1.2(a)(2) (Nov. 1, 1998). Application Note 3 to that Guidelines section states: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense)." That is what happened here. Cabrera's arrest on October 18, 1989 for an attempted drug sale on that date occurred before he committed the second offense—the attempted robbery on January 31, 1991. Although Cabrera in-

sists that his guilty plea to these two charges reflected "a deal to cop-out (plead guilty) to both of these charges as one," (Petition, p. 7), that "deal," even if it existed, cannot trump the Guidelines.

For the above reasons, Cabrera's application to set aside the judgment of conviction is denied and the petition is dismissed.